**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AT&T SERVICES, INC., and AT&T MOBILITY LLC,

Plaintiffs,

v.

T-MOBILE US INC.,

Defendant.

Case: 1:26-mc-00162
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 11/4/2026
Description: Misc.

CASE IN OTHER COURT:

*AT&T Services, Inc. and AT&T Mobility LLC v. T-Mobile US Inc.*, No. 3:25-cv-03279-S (N.D. Tex.)

*AT&T Services, Inc. and AT&T Mobility LLC v. T-Mobile US Inc.*, No. 1:26-mc-00094-CKK (D.D.C.)

HEARING REQUESTED

**AT&T'S MOTION TO COMPEL NON-PARTY HARRISX TELECOM LLC**
**TO COMPLY WITH DEPOSITION SUBPOENA**

Plaintiffs AT&T Services, Inc. and AT&T Mobility LLC (collectively, "AT&T") move under Federal Rules of Civil Procedure 30(b)(6), 37(a)(3)(B)(ii), and 45(d)(1) to compel nonparty HarrisX Telecom LLC to honor its legal obligations by complying with Plaintiffs' Deposition Subpoena to Testify in a Civil Action (the "Deposition Subpoena").

AT&T served the Deposition Subpoena on November 4, 2026, in *AT&T Services, Inc. and AT&T Mobility LLC v. T-Mobile US Inc.*, Case No. 3:25-cv-03279-S, pending in the U.S. District Court for the Northern District of Texas, Dallas Division. As set forth below, HarrisX's conduct and express positions leave no alternative; an order compelling compliance is warranted.

RECEIVED
NOV 04 2026
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**Local Rule 7(m) Statement**

Pursuant to Local Rule 7(m), the undersigned counsel confirms that before filing this Motion, counsel for AT&T discussed the relief sought with counsel for HarrisX in a good-faith effort to obtain consent to the relief requested. AT&T understands that HarrisX opposes this Motion.

Dated: November 4, 2026

Timothy S. Durst

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AT&T SERVICES, INC., and AT&T MOBILITY LLC,

Plaintiffs,

v.

T-MOBILE US INC.,

Defendant.

Case No. 1:26-mc-00094-CKK

CASE IN OTHER COURT:

*AT&T Services, Inc. and AT&T Mobility LLC v. T-Mobile US Inc.*, No. 3:25-cv-03279-S (N.D. Tex.)

*AT&T Services, Inc. and AT&T Mobility LLC v. T-Mobile US Inc.*, No. 1:26-mc-00094-CKK (D.D.C.)

**MEMORANDUM OF LAW IN SUPPORT OF**
**AT&T'S MOTION TO COMPEL NON-PARTY HARRISX TELECOM LLC**
**TO COMPLY WITH DEPOSITION SUBPOENA**

## TABLE OF CONTENTS


Page

INTRODUCTION ........ 5

I. BACKGROUND ........ 6

A. The Underlying Action and HarrisX's Role ........ 6

B. AT&T Serves its Rule 30(b)(6) Subpoena and HarrisX Accepts Service ........ 7

II. LEGAL STANDARD ........ 10

III. ARGUMENT ........ 11

A. HarrisX's Categorical Refusal To Seat Any Witness Is Improper ........ 11

B. HarrisX Refused To Meet And Confer In Good Faith ........ 12

C. HarrisX's Stonewalling and Bad Faith Warrant Court Intervention ........ 13

D. HarrisX's Stated Objections Do Not Excuse Its Refusal ........ 14

i. Relevance ........ 14

ii. Exhaustion ........ 15

iii. Duplication and Timing ........ 16

iv. Confidentiality ........ 16

v. Witness Fee ........ 16

CONCLUSION ........ 17

## INTRODUCTION

HarrisX has refused to present any witness for AT&T's requested deposition. Not on a single noticed topic. Not on a new date. Its counsel stated so during an October 30, 2026 meet-and-confer call during which the parties discussed AT&T's first deposition subpoena that originally sought a deposition for November 5: when asked whether any topic could be rephrased into a form acceptable to HarrisX, HarrisX answered that its position was that ***all*** are improper; when asked whether HarrisX would produce a witness if AT&T re-served the subpoena with a new date and prompt delivery of the witness fee, HarrisX answered it would not. Declaration of Kristin Alvarado ¶¶ 14-19.

That categorical refusal is the latest chapter in a familiar story. HarrisX is the vendor whose "Billing Snapshots" T-Mobile cites as the basis for the advertising claims AT&T challenges as false and misleading in the Northern District of Texas (the "Texas Action"). Two document subpoenas, two pending motions to compel in Judge Kollar-Kotelly's Court, broken production promises, and a production even HarrisX admits is incomplete, and HarrisX now refuses to testify at all. Alvarado Decl. ¶¶ 3, 17–20; *see AT&T Services, Inc. et al v. T-Mobile US, Inc.*, No. 1:26-mc-00094-CKK (D.D.C.) (the "DC Action"), Dkt. Nos. 1, 6, 21, 22. AT&T conferred in good faith on the scope of its noticed topics, but HarrisX made clear it would refuse to produce any witness, period. AT&T has re-served its deposition subpoena for December 10, 2026, with witness fees tendered, and files this motion the same day because HarrisX has already announced—unequivocally—that it will defy this subpoena too.

Timing matters here, and every week of delay costs AT&T ground it cannot recover. AT&T needs both HarrisX's testimony and its documents now: they bear on threshold issues early in the Texas Action—the methodology, data, and validation behind the Billing Snapshots on which

T-Mobile rests multiple challenged advertising claims. Those issues will shape how AT&T develops and pursues its case. AT&T's two motions to compel document production have been pending since June and July 2026, and while they remain unresolved, the Texas Action keeps moving forward without core evidence on falsity and substantiation that only HarrisX holds. HarrisX's strategy is plain: refuse, delay, and run out the clock until the evidence arrives too late to matter. Prompt rulings on the pending motions, together with an order on this one compelling testimony, are the only way to ensure AT&T obtains that highly relevant evidence while it can still use it. HarrisX should be compelled to designate a witness and appear.

# I. BACKGROUND

## A. The Underlying Action and HarrisX's Role

HarrisX sits at the center of AT&T's Lanham Act claims in the Texas Action. AT&T alleges that T-Mobile engaged in a pattern of false and misleading advertising aimed at AT&T's customers, including claims that (1) T-Mobile customers saved over $3,700 versus competitors in the last five years (the "$3,700 Claim"), (2) T-Mobile families can save up to $700 a year versus competitors (the "$700 Claim"), and (3) T-Mobile customers have the lowest wireless bills versus AT&T and Verizon over the past five years (the "Lowest Bills Claim"). Alvarado Decl. ¶ 2. T-Mobile itself attributes each of those claims to the "HarrisX Billing Snapshots"—surveys, analyses, and reports generated or maintained by HarrisX relating to consumer wireless billing information. *Id.* Therefore, HarrisX's methodology, data, and validation processes are core evidence of each of T-Mobile's ads' falsity and substantiation. And because these issues arise early in the Texas Action, HarrisX's testimony and documents will inform how AT&T frames and develops its Lanham Act claims as the case proceeds, including conducting discovery against T-Mobile and working with AT&T's experts.

Yet HarrisX has resisted discovery on those core issues at every turn. AT&T served its First Subpoena for documents on April 7, 2026, and its Second Subpoena on June 1, 2026; HarrisX objected to both and initially agreed to produce nothing in response. Alvarado Decl. ¶ 3; DC Action, Dkt. 6-1 ¶¶ 5–10. AT&T moved to compel HarrisX's responses on June 16, 2026. DC Action, Dkt. 1. HarrisX then unequivocally agreed on July 6, 2026, orally and in writing, to produce documents responsive to both subpoenas—inducing AT&T to pause briefing—only to renounce its commitments on July 15 and refuse to produce any documents because, HarrisX says, T-Mobile told it not to. DC Action, Dkt. 6-1 ¶¶ 12–20. AT&T filed its Second Motion to Compel on July 24, 2026. DC Action, Dkt. 6. HarrisX eventually produced documents, but its own opposition conceded it had located three additional responsive documents its earlier searches missed, which it has since refused to produce. DC Action, Dkt. 22 at 1, 13. Both motions remain pending. Alvarado Decl. ¶ 3.

### B. AT&T Serves its Rule 30(b)(6) Deposition Subpoena and HarrisX Accepts Service

AT&T's first deposition subpoena—sent to HarrisX's counsel on October 2, 2026, with a request to confirm whether they were authorized to accept service on behalf of HarrisX—obligated HarrisX to appear on November 5, 2026, at 9:00 a.m., at O'Melveny & Myers LLP, 1625 Eye Street, NW, Washington, D.C., on 25 topics described with particularity. Alvarado Decl. ¶ 6. The topics track the document subpoenas and related issues: HarrisX's relationship with T-Mobile; the design, survey instrument, sampling, weighting, and validation of Billing Snapshots; the methodologies behind the $700, $3,700, and Lowest Bills Claims; internal review of those claims; prior challenges to the methodology; and HarrisX's document collection and retention (given

obvious gaps in HarrisX's productions to date). AT&T served notice on T-Mobile the same day. *Id.*

Hearing nothing, AT&T followed up on Wednesday, October 7 and asked for confirmation about service by Thursday, October 8. *Id.* ¶ 7. HarrisX's counsel replied the same day that they would "confirm on Friday after we speak with our client." *Id.* On Friday, October 9, counsel confirmed that "as of today's date, Ballard Spahr will accept service on behalf of HarrisX of the deposition subpoena from AT&T."[1] *Id.* ¶ 8.

Then, for two weeks, HarrisX said nothing. *Id.* ¶ 9. On October 23—less than two weeks before the deposition—AT&T asked HarrisX to state by October 27 "how HarrisX intends to proceed, including whether it intends to object in whole or in part," and offered to meet and confer "[i]f HarrisX has concerns about the topics or wants to discuss scheduling." *Id.* ¶ 10. Counsel for HarrisX answered on October 27: it "objects to the subpoena in its entirety and will not be producing a witness for the deposition noticed for November 5, 2026." *Id.* ¶ 11. It branded every topic "overbroad on their face, unduly burdensome, vague and ambiguous, cumulative, and oppressive"; claimed its document productions "exhaust all arguably relevant evidence that HarrisX possesses"; argued AT&T could get the information from T-Mobile; and contended the subpoena was invalid because AT&T had not tendered the witness fee and mileage with service. *Id.* ¶ 11; Ex. F. HarrisX insisted that no "narrowing of individual topics" could cure these defects, demanded withdrawal, and threatened a protective-order motion. *Id.*

On October 28, AT&T disputed HarrisX's characterization of the topics but agreed to confer during HarrisX's proposed October 30 window. *Id.* ¶ 12. AT&T committed to address

---

[1] Due to HarrisX's email acceptance of subpoena service, AT&T had not tendered witness fees at the time of service of that moot subpoena. AT&T intended to provide those fees once the HarrisX witness or witnesses were identified, and AT&T could calculate the appropriate mileage fee(s).

every issue HarrisX raised and asked counsel to "be prepared to address whether you are authorized to accept service of an amended deposition subpoena for HarrisX, should AT&T determine to withdraw and amend in any respect following the meet and confer." *Id.* The call was set for 11:30 a.m. ET on October 30. *Id.*

But instead of conferring in good faith to seek any compromise, HarrisX used that call to interrogate AT&T. It challenged relevance of five topics—covering HarrisX's organizational structure, its business relationship with T-Mobile, prior challenges to its methodology, and document retention and collection categories—and demanded to know whether AT&T had evidence of spoliation to justify several of those topics. *Id.* ¶ 15. AT&T answered each of HarrisX's questions, explaining each topic's relevance and why HarrisX is the right witness even though it is a third party. *Id.* For example, HarrisX's relationship with and revenue from T-Mobile bears on bias and on the weight of HarrisX's substantiation work, and prior challenges to the methodology may expose flaws relevant here. *Id.* AT&T offered to keep discussing each topic to understand why HarrisX considered it unduly burdensome. *Id.*

Yet HarrisX once again foreclosed further conversation, rejecting any such narrowing, insisting instead that AT&T must withdraw the subpoena on all topics because ***none*** could be cured by narrowing in HarrisX's view, and demanding that AT&T first exhaust ***all*** discovery efforts with T-Mobile. *Id.* ¶ 16. HarrisX's counsel asked whether AT&T had deposed T-Mobile or served interrogatories on these subjects, demanded copies of all party discovery, and declared that AT&T should seek leave to request interrogatories beyond the federal limits before turning to HarrisX. *Id.* Counsel went further, stating that HarrisX should not have produced anything in response to the document subpoenas, noting that all such productions were before outside counsel was retained. *Id.*

AT&T then asked, and HarrisX confirmed, that HarrisX would not produce a witness under the current subpoena—full stop. *Id.* ¶ 17. AT&T questioned further: would HarrisX produce a witness if AT&T withdrew the subpoena and served an amended one with a new date and the fees tendered? No. *Id.* HarrisX would not produce a witness on ***any*** topic under any subpoena, ***any*** request would be improper, and exhaustion of T-Mobile discovery was just one of many problems. *Id.* ¶¶ 17–18. Finally, AT&T asked the question it had previewed in writing two days earlier—would counsel even agree to accept service of an amended subpoena? *Id.* ¶ 19. HarrisX's counsel said they could not provide an answer. *Id.*

A few hours after the parties' October 30 call, AT&T withdrew its October 2, 2026 subpoena in light of the impracticality at that point of the November 5 date, to remedy HarrisX's complained-of fees issue and to consider whether any of HarrisX's comments about the topics warranted any refinement of the topic descriptions. *Id.* ¶ 22. On November 4, 2026, AT&T served an amended Rule 30(b)(6) subpoena for a deposition on December 10, 2026, on narrowed topics, and tendered the witness fee and maximum mileage fee with service. *Id.* ¶ 23. The next steps of this saga are predictable: HarrisX has already said it will not produce a witness on any subpoena. Its obstruction will continue. Waiting until December 10 for HarrisX's non-appearance to confirm a refusal HarrisX has already expressly announced would waste the parties' and the Court's time and jeopardize the Texas Action schedule at the very stage when HarrisX's evidence is needed to shape AT&T's Lanham Act strategy. AT&T therefore files this motion the same day it served the subpoena.

## II. LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

"Generally speaking, 'relevance' for discovery purposes is broadly construed." *Food Lion v. United Food & Comm. Workers Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). "[A] party may discover information which is not admissible at trial if such information will have some probable effect on the organization and presentation of the moving party's case." *Jewish War Vets. of the U.S.A. v. Gates*, 506 F. Supp. 2d 30, 43 (D.D.C. 2007) (quoting *Smith v. Schlesinger*, 513 F.2d 462, 473 (D.C. Cir. 1975)).

Under Rule 45, the requesting party need only "explain[] how the requested information is relevant." *Jewish War Vets.*, 506 F. Supp. 2d at 42. The burden then "shifts to the objecting party to explain why discovery should not be permitted." *Id.* The resisting party must show the subpoena is oppressive, and the court weighs the actual burden shown against the requesting party's need and the nature and importance of the litigation. *See Linder v. Dep't of Def.*, 133 F.3d 17, 24 (D.C. Cir. 1998) (reversing restrictions on third-party subpoenas where the district court assumed burden without supporting evidence). The court where compliance is required may compel compliance and may hold in contempt a person who, "having been served, fails without adequate excuse to obey the subpoena." Fed. R. Civ. P. 45(d)(2)(B)(i), 45(g). A motion directed to a nonparty must be made in the court where the discovery will be taken, Fed. R. Civ. P. 37(a)(2), and a party may move to compel a deposition when the nonparty fails to comply. Fed. R. Civ. P. 30(a)(1).

## III. ARGUMENT

### A. HarrisX's Categorical Refusal To Seat Any Witness Is Improper

A subpoenaed organization "must designate" one or more persons to testify on the noticed matters. Fed. R. Civ. P. 30(b)(6). A nonparty that objects must secure a court order modifying or quashing the subpoena. *See* Fed. R. Civ. P. 26(c), 45(d)(3); *cf.* Fed. R. Civ. P. 37(d)(2). This

Court has applied exactly that principle to a nonparty organization. *See In re Subpoena Served on Clark Realty Capital, LLC*, No. 23-MC-00049 (RC), 2023 WL 8005096, at *3–4 (D.D.C. Nov. 17, 2023); *HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 227–31 (D.D.C. 2015). Here, AT&T is seeking an order compelling attendance because the dispute is joined, and AT&T is prejudiced the longer it must wait for judicial resolution.

HarrisX did not object to a topic; it refused to testify at all. It rejected every topic, refused any rephrasing, and vowed not to appear even on an amended subpoena with a new date and the fee tendered. Alvarado Decl. ¶¶ 17–18. Many of AT&T's topics go to the heart of its Lanham Act claims in the Texas Action and are plainly proper for a third party: how Billing Snapshots work, how respondents were recruited and screened, how data was weighted and validated, and how the very claims in suit were calculated. *Id.* HarrisX itself agreed to produce methodology documents on these subjects. DC Action, Dkt. 6-1 ¶¶ 12, 15. And its own productions created conflicts that only testimony can resolve—such as, is HarrisX's bill validation "100% human" or machine-driven? *See* DC Action, Dkt. 22 at 6–7. A blanket refusal to testify about any of it cannot be squared with Rules 30(b)(6) and 45. Indeed, Rule 45 inherently contemplates discovery on third parties where they have relevant information. *See also, e.g.*, *Fed. Trade Comm'n v. Sysco Corp.*, 308 F.R.D. 19, 23 (D.D.C. 2015). HarrisX should be ordered to designate and produce one or more witnesses on the noticed topics.

**B. HarrisX Refused To Meet And Confer In Good Faith**

The meet-and-confer requirement exists to narrow disputes, not to stage them. *See* Fed. R. Civ. P. 37(a)(1); LCvR 7(m) (requiring parties to "discuss the anticipated motion" in a good-faith effort "to narrow the areas of disagreement"). The Rules themselves required HarrisX to "confer in good faith" about the matters for examination. Fed. R. Civ. P. 30(b)(6). The duty is good-faith

engagement, not compelled agreement. *See* Fed. R. Civ. P. 30(b)(6), Advisory Committee's Note to 2020 Amendment. Courts in this District find conferral satisfied where the movant's correspondence, efforts to narrow topics, and conferences put the nonparty on notice of an anticipated motion to compel. *See Clark Realty*, 2023 WL 8005096 at *3–4. What counts is good-faith discussion, not a mere announcement of one's own position without any attempt to narrow the issues. *See HT S.R.L.*, 125 F. Supp. 3d at 228–29.

AT&T did everything the rules contemplate. It sought HarrisX's position weeks before the deposition, offered to discuss topics and scheduling, accepted HarrisX's proposed call time, answered every question HarrisX posed, invited HarrisX to identify any topic it deemed unduly burdensome, and asked whether any topic could be rephrased or narrowed. Alvarado Decl. ¶¶ 10, 17–18. HarrisX offered nothing. No narrowing. No designee on any topic. No alternative date. *Id.* ¶ 21. Instead, it demanded that AT&T disclose all of its party discovery and asked whether AT&T would pay fees on a motion HarrisX had never filed. *Id.* ¶¶ 16, 20. AT&T satisfied Rule 37(a)(1) and LCvR 7(m); HarrisX did not. That refusal to engage independently warrants an order compelling compliance.

### C. HarrisX's Stonewalling Warrants Court Intervention

Courts compel compliance where a subpoenaed party's conduct shows informal resolution will not work. *See HT S.R.L.*, 125 F. Supp. 3d at 221 (enforcing subpoena where recipient agreed to engage in the discovery process, did not engage in a good-faith conference, and then reversed position). An enforceable order with a firm deadline is the right remedy, because a nonparty that disobeys such an order may be held in civil contempt—no showing of intentional disobedience or bad faith required. *See Food Lion*, 103 F.3d at 1015–20 (affirming civil contempt against a nonparty consultant for untimely compliance with an enforcement order).

HarrisX's refusal to testify follows a documented pattern: boilerplate objections; an oral and written agreement to produce that induced AT&T to pause briefing; a reversal at T-Mobile's instruction; missed deadlines; and productions HarrisX itself admits were incomplete. DC Action, Dkt. 6-1 ¶¶ 10–20; Dkt. 22 at 1, 13. On October 30, HarrisX went further, declaring that it should not have produced any documents at all either. Alvarado Decl. ¶ 16. And no effort to compromise was made. On October 27, it declared the fee issue was "incurable" among other issues; by October 30, fees did not matter (even if AT&T served a new subpoena with simultaneously tendered fees) because the problem was the topics and the existence of any subpoena at all. A party that swaps its reasons while holding its conclusion fixed is not negotiating—it is stonewalling. Only a court order will secure HarrisX's testimony.

### D. HarrisX's Stated Objections Do Not Excuse Its Refusal

HarrisX's objections—relevance, exhaustion, duplication, confidentiality, and witness fees—are generic labels, not the concrete showing of burden the law demands. A nonparty resisting discovery must support claimed burden with evidence tied to the actual requests; generalized descriptions and blanket assertions of overbreadth, burden, and vagueness do not suffice. *See Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F. Supp. 2d 332, 354–55 (D.D.C. 2011) (denying undue burden objections based on general and conclusory evidence of the burden); *In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Grp., PLLC*, 333 F.R.D. 291, 295 (D.D.C. 2019) (similar). And none excuses HarrisX's refusal to appear.

#### i. Relevance

The deposition topics are highly relevant to the issues in the Texas Action. Relevance must be assessed against all pleaded theories, and burden may not be assumed without evidence. *Linder*, 133 F.3d at 24. Courts in this District reject undue-burden challenges built on generalized

descriptions, *Call of the Wild*, 770 F. Supp. 2d at 355–56, and compel nonparty compliance over blanket objections unsupported by affidavits or other evidence, *Cooke Legal Grp.*, 333 F.R.D. at 295. HarrisX has offered no evidence of what preparation any topic would require, and the narrowed topics are proportionate to HarrisX's central role as the source of the data underlying several challenged advertisements in the Texas Action.

Each topic is relevant because T-Mobile's challenged claims rest entirely on HarrisX's Billing Snapshots. HarrisX's methodology, validation, and relationship with T-Mobile are directly probative of falsity, substantiation, and bias—and are crucial to AT&T's development of its Lanham Act case. These are early, threshold issues in the Texas Action. What HarrisX did, and what its documents and testimony show, will inform how AT&T develops and pursues its claims. That alone satisfies AT&T's initial burden and shifts the burden to HarrisX. *See Jewish War Vets.*, 506 F. Supp. 2d at 42. HarrisX has answered with nothing but generic, wholesale objections.

**ii. Exhaustion**

No rule requires AT&T to exhaust every avenue of party discovery before deposing the nonparty that performed the underlying analysis at issue in the discovery. Courts in this District have clarified that the liberality of pretrial discovery "applies to discovery sought from third parties," and "often allows extensive intrusion into the affairs of both litigants and third parties." *Fed. Trade Comm'n v. Sysco Corp.*, 308 F.R.D. 19, 23 (D.D.C. 2015). Rule 26(b)(2)(C) limits discovery only where it is unreasonably duplicative or obtainable from a more convenient, less burdensome, or less expensive source. Fed. R. Civ. P. 26(b)(2)(C). AT&T seeks HarrisX's own knowledge, not T-Mobile's, and testimony about HarrisX's own conduct. T-Mobile cannot explain how HarrisX designed, weighted, and validated the Billing Snapshots—and why. HarrisX is not a redundant source of this evidence; it is the best source.

### iii. Duplication and Timing

Documents are no substitute for testimony explaining them. A HarrisX witness can explain what HarrisX did, and why, including information not recorded in the limited document production. And it can explain the documents where relevant information is not apparent from their face (including the data). That is particularly critical here, where the materials are technical, proprietary, and exhibit conflicting internal information. *See* DC Action, Dkt. 22 at 6–7. Without a witness to explain them, those conflicts cannot be resolved. Thus, AT&T needs both: HarrisX's complete documents *and* the testimony explaining what they show, because together they bear on early strategic decisions in AT&T's false and misleading advertising case. Nor does the pending status of the document-subpoena motions justify HarrisX's refusal to provide testimony on a separate subpoena; at most, the motions would arguably bear on sequencing, and HarrisX proposed none. Alvarado Decl. ¶ 21.

### iv. Confidentiality

A protective order permitting confidential and attorneys'-eyes-only designations weighs against quashing a subpoena for sensitive commercial information. The Protective Order in the Texas Action addresses HarrisX's concerns—including the in-house counsel limitation HarrisX has already invoked. Alvarado Decl. ¶ 3; *see* DC Action, Dkt. 6-1 ¶ 7.

### v. Witness Fee

Courts that find initial service defective permit reissuance; they do not excuse noncompliance altogether. *Cf. Call of the Wild*, 770 F. Supp. 2d at 360–62 (quashing improperly served subpoena but allowing reissuance). Whatever the merit of HarrisX's fee objection to the October 2 subpoena, AT&T withdrew it and tendered the maximum fee with the November 4 subpoena. Alvarado Decl. ¶ 23. HarrisX has already said that cure would not change its position,

confirming that the fee issue was never the real motivation for refusing to present a witness. The November 4 subpoena independently satisfies Rule 45(b)(1)'s requirement that fees for the witness's one day's attendance and maximum mileage be tendered with service. Fed. R. Civ. P. 45(b)(1). Any defect in the withdrawn subpoena is moot, and a cured technicality cannot keep critical evidence out of AT&T's hands.

## **CONCLUSION**

For these reasons, AT&T respectfully requests that the Court order HarrisX to (1) designate one or more Rule 30(b)(6) witnesses on the topics in AT&T's November 4, 2026 subpoena; (2) appear for deposition on December 10, 2026, or another date agreed upon by the parties within 21 days of the Court's order; (3) identify its designee(s) for each topic at least seven days before the deposition; and (4) grant such further relief as the Court deems just.

Dated: November 4, 2026

Respectfully submitted,

TIMOTHY S. DURST
tdurst@omm.com
**O'MELVENY & MYERS LLP**
2801 North Harwood Street, Suite 1600
Dallas, TX 75201-2692
Telephone: 972-360-1900
Facsimile: 972-360-1901

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing document was served on counsel for Defendant T-Mobile US Inc. via electronic delivery on November 4, 2026.

Timothy S. Durst